CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 02 2017

JULIA C. DUDLEY, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CONCORDIA PHARMACEUTICALS, )
INC., )
 )
    Plaintiff, )
 )
v. )
 )
METHOD PHARMACEUTICALS, LLC, )
et al., )
 )
    Defendants. )

Civil Action No. 3:14CV00016

**MEMORANDUM OPINION**

By: Hon. Glen E. Conrad
Chief United States District Judge

On the fourth day of a bifurcated trial, a jury returned a verdict in favor of the plaintiff, Concordia Pharmaceuticals, Inc. ("Concordia"), on its claim that the defendants, Method Pharmaceuticals, LLC ("Defendant Method") and Matthew Scott Tucker ("Defendant Tucker, and collectively, "Method"), engaged in false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). In the subsequent damages phase of trial, the jury found that Concordia was entitled to $733,200.00 in actual or compensatory damages. However, the jury also found that Method's false advertising was not willful. Concordia subsequently filed a motion for judgment as a matter of law or a new trial on the issue of willfulness, a motion for enhanced damages and prejudgment interest, and a motion for attorneys' fees and litigation costs. This memorandum opinion sets forth the court's rulings on Concordia's motions.

### Background

In May of 2014, Concordia acquired the Donnatal® line of products ("Donnatal") from PBM Pharmaceuticals, Inc. ("PBM"). Donnatal is a line of combination phenobarbital and belladonna alkaloid ("PBA") products that is used as adjunctive therapy in the treatment of

irritable bowel syndrome and acute enterocolitis. Donnatal is available by prescription in the form of a tablet and an elixir.

Donnatal was first introduced in the 1930s, before drug manufacturers were required to prove that drugs were both safe and effective in order to obtain approval by the Food and Drug Administration ("FDA"). Although Donnatal products have been approved for safety, the FDA has yet to determine their effectiveness.

For many years, Donnatal faced competition from generic PBA products that were pharmaceutically equivalent to Donnatal. In 2011, manufacturers of the generic versions began to take their products off the market. Once the inventories of previously manufactured generic products were eliminated, Donnatal was the only line of PBA products available for prescription.

Defendant Method is a wholesale drug distribution company based in Arlington, Texas. The company was founded by Defendant Tucker in 2012 and he is the sole owner. During the time period at issue, Christopher Boone served as the company's vice president of operations.

Method sells approximately thirty pharmaceutical products that are manufactured for the company by contract manufacturing organizations. Rather than employing a sales force, Method utilizes pharmaceutical databases to promote its products. Method's admitted business strategy is to ensure that its products are "linked" to existing drugs in the databases, which are used by members of the pharmaceutical industry to determine whether generic substitutes are available for brand name products. See Tr. of Trial Testimony of Matthew Scott Tucker ("Tucker Tr.") at 5, Docket No. 229 ("[M]y business model is to sell any product that we have. Link[ing] would be the way we do that.").

In 2013, Method began making plans to market a new product that would be pharmaceutically equivalent to Donnatal. The new product was eventually named Me-PB-Hyos.

2

Method contacted Winder Laboratories, LLC ("Winder") and expressed an interest in having Winder manufacture the new product. In December of 2013, Method issued a purchase order for initial stability testing. However, Winder never performed the stability testing necessary to develop Me-PB-Hyos, and no finished product was manufactured by Winder or any other manufacturer.

Nonetheless, in March of 2014, Method moved forward with its plans to market Me-PB-Hyos as a generic alternative to Donnatal. Method used the product labels and package inserts for Donnatal tablets and elixir to create labels and inserts for Me-PB-Hyos tablets and elixir. Method then proceeded to list the nonexistent Me-PB-Hyos products with two of the major pharmaceutical databases, Medi-Span and First Databank.

On March 31, 2014, Method submitted the Me-PB-Hyos product labels, along with new product submission forms, to Medi-Span. As part of its efforts to have Me-PB-Hyos linked to Donnatal in the Medi-Span database, Method listed Donnatal's National Drug Code ("NDC") as the Reference NDC. See Tr. of Trial Testimony of Christopher Boone ("Boone Tr.") at 27, Docket No. 228 (acknowledging that Method identified Donnatal as the reference drug for Me-PB-Hyos for the purpose of having Me-PB-Hyos listed as its "generic[] equivalent"); see also Tr. of Trial – Day Three ("Day Three Tr.") at 74, Docket No. 263 (confirming that Method suggested that Me-PB-Hyos should be linked to Donnatal). Method also provided pricing information for the Me-PB-Hyos products. The listed prices for the Me-PB-Hyos products were lower than the listed prices for the Donnatal products. Although Method knew that the products described in the Me-PB-Hyos labels and inserts did not exist, and that no stability testing had been performed to develop the products, Method indicated that the pricing information was effective as of April 1, 2014. Based on the information provided by Method, the Me-PB-Hyos

3

products were listed in the Medi-Span database and assigned the same Generic Product Identifier ("GPI") as Donnatal.

In addition to Medi-Span, Method undertook to have its Me-PB-Hyos products listed in First Databank's pharmaceutical database. However, First Databank refused to list the Me-PB-Hyos products without validation from DailyMed, a website operated by the National Library of Medicine. Consequently, Method endeavored to list the Me-PB-Hyos products with DailyMed. Method sent DailyMed the product labels for the nonexistent Me-PB-Hyos products. Despite knowing that the products described in the labels did not exist, and that no stability testing had been performed to develop the products, Method indicated that it intended to start marketing the products on June 1, 2014.

On June 3, 2014, after successfully listing Me-PB-Hyos with DailyMed, Method resubmitted the Me-PB-Hyos product labels to First Databank. Method indicated that its planned launch date for the products was June 1, 2014, a day that had already passed. At that time, Method knew that no Me-PB-Hyos products were available to launch the following day, much less two days earlier. See Boone Tr. at 46-47. Method also knew that the information that it provided would be relied upon by members of the pharmaceutical industry. Id. Method's efforts were once again successful, and the Me-PB-Hyos products were listed in First Databank's pharmaceutical database in early June 2014.

By that point, the Medi-Span listing also showed a marketing start date of June 1, 2014 for the Me-PB-Hyos products. Method was aware of this fact, and even reviewed the Medi-Span listing on June 3, 2014 to confirm that the marketing start date had been added. See Tucker Tr. at 25-26.

On September 15, 2014, after the instant action was filed, Method contacted Winder via email regarding the Me-PB-Hyos project. Method indicated that it knew that Winder had not started anything on the project, and that the company had decided that it "might be best to bail on [the] project." Pl.'s Trial Ex. 25. Nonetheless, that same day, in response to an inquiry from Medi-Span regarding the status of Me-PB-Hyos, Method advised Medi-Span that "Me-PB-Hyos is an active product and will be available to ship by November 15, 2014." Boone Tr. at 40. Method also confirmed that "[t]he pricing and label . . . are current and correct." Id.

Ultimately, Method never launched the Me-PB-Hyos products, and the products were not manufactured by Winder or any other company. In mid-October 2014, Medi-Span removed the listings for the Me-PB-Hyos products. Around the same time, First Databank moved its listings for the Me-PB-Hyos products from active listings to archived listings.

After the Me-PB-Hyos products were listed with Medi-Span and First Databank, Donnatal prescriptions and unit sales decreased. During the course of the litigation, the parties strenuously disputed whether the listings were the sole cause of the reduction in prescriptions and unit sales. At trial, Concordia presented evidence indicating that it experienced lost sales in excess of $29.4 million dollars after the Me-PB-Hyos products were listed with the databases. Concordia maintained that the database listings for the nonexistent products were solely responsible for the decline in sales. Method, on the other hand, presented evidence indicating that a number of other factors contributed to the reduction in Donnatal unit sales, including significant increases in the prices of Donnatal products.

Concordia also presented evidence regarding the efforts it undertook to alleviate confusion in the marketplace regarding the existence and availability of a generic alternative to Donnatal. For instance, Concordia spent $885,015.00 on a coupon buy-down program

5

implemented to combat the negative effects of the listings for Me-PB-Hyos. The company also revamped its marketing strategy and engaged in increased promotional efforts targeting pharmacies and prescribers.

## Procedural History

PBM commenced this action against Method on April 29, 2014, asserting claims under the Lanham Act and Virginia law. PBM filed a motion for preliminary injunction on May 6, 2014. That motion was ultimately withdrawn without prejudice on September 16, 2014.

Following a series of amendments, Concordia pursued claims for damages against Defendant Method and Defendant Tucker. After the completion of discovery, the parties filed cross-motions for summary judgment. On March 29, 2016, Concordia's motion for summary judgment was denied and Method's motion for summary judgment was granted in part and denied in part.

Prior to trial, Concordia and Method moved to exclude certain opinions offered by the opposing side's expert witnesses. On April 13, 2016, the court granted Method's motion to exclude Ivan Hofmann's opinion on the amount of lost profit damages incurred by Concordia. Specifically, the court excluded Hofmann's opinion that Concordia suffered no less than $29.4 million dollars in lost profits as a result of the pharmaceutical database listings for Me-PB-Hyos. The court concluded that Concordia had failed to meet its burden of showing that Hofmann's lost profits calculations rested upon a sufficient factual basis and a reliable application of established principles and methods, insofar as they attributed all of the measured lost profits to the database listings for Me-PB-Hyos. Accordingly, the court ruled that Hofmann's opinion as to the total amount of lost profit damages incurred by Concordia must be excluded under Federal Rule of

6

Evidence 702, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny.

Concordia's claim for false advertising under the Lanham Act proceeded to trial on April 18, 2016. The issues of liability and damages were presented to the jury in a bifurcated fashion. During the liability phase, the jury found in favor of Concordia on its claim for false advertising. During the damages phase, both parties presented evidence concerning the extent of the damages suffered by Concordia, including the testimony of experts. After both parties rested, the court submitted the issues of damages and willfulness to the jury. The jury ultimately found that Concordia was entitled to recover $733,200.00 in actual or compensatory damages. With respect to the issue of willfulness, the jury indicated that it was unable to find that the defendants willfully engaged in false advertising.

Concordia has since filed a motion for judgment as a matter of law or a new trial on the issue of willfulness, a motion for enhanced damages and prejudgment interest, and a motion for attorneys' fees and litigation costs. The motions have been fully briefed and are ripe for adjudication.[1]

## Discussion

### I. Motion for Judgment as a Matter of Law or a New Trial

In the first motion, Concordia moves for judgment as a matter of law or a new trial on the issue of willfulness. Concordia initially argues that the jury's finding on that issue is only advisory, and that the court may make its own determination based upon the facts and circumstances of the case. In the event that the court disagrees and decides that the jury's determination is binding, Concordia argues that it is entitled to judgment as a matter of law or a

---

[1] Both sides elected to have the motions decided on the briefs.

new trial on that issue. See Pl.'s M. for J. as a Matter of Law or a New Trial at 3, Docket No. 265 ("[S]hould this Court find that the jury's determination is not merely advisory, Plaintiff is entitled to judgment as a matter of law or, in the alternative, a new trial on the issue of willfulness for the reasons set forth below.").

Method does not appear to contest Concordia's argument regarding the advisory nature of the jury's verdict on the issue of willfulness. Upon review of existing caselaw, the court agrees with Concordia that the jury's finding on that issue is not binding. "It is well-settled that no proof of intent or willfulness is required" to prevail on a claim for false advertising under the Lanham Act. Vector Prods. v. Hartford Fire Ins. Co., 397 F.3d 1316, 1319 (11th Cir. 2005). However, a finding that the defendant acted willfully may, in some cases, support an award of enhanced damages or attorneys' fees. See Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 175 (4th Cir. 2006) (explaining that "willfulness is a proper and important factor" in determining an appropriate damages award under the Lanham Act); Exclaim Mktg., LLC v. DirecTV, LLC, No. 15-2399, 2016 U.S. App. LEXIS 23378, at *25 (4th Cir. Dec. 29, 2016) (noting that willfulness is "part of the totality of the circumstances informing the analysis" applicable to a request for fees). Because it is the court that ultimately decides whether to award enhanced damages or attorneys' fees, the jury's verdict on the issue of willfulness is only advisory. See, e.g., B&F Sys., Inc. v. LeBlanc, 519 F. App'x 537, 540 (11th Cir. 2003) (observing that the district court "properly considered the jury finding with respect to willfulness as merely advisory"); Visible Sys. Corp. v. Unisys Corp., No. 04-11610-RGS, 2008 U.S. Dist. LEXIS 9030, at *4 (D. Mass. Feb. 7, 2008) (discussing the jury's "advisory verdict that [the] infringement was willful").

Accordingly, Concordia's motion for judgment as a matter of law or a new trial on the issue of willfulness will be denied as moot. See Perkin-Elmer Corp. v. Computervision Corp.,

8

732 F.2d 888, 895 n.5 (Fed. Cir. 1984) (noting that Rule 50 motions "apply only to <u>binding</u> jury verdicts") (emphasis in original); <u>Shiley, Inc. v. Bentley Labs., Inc.</u>, 601 F. Supp. 964, 1016 n.5 (C.D. Cal. 1985) (concluding that the jury's verdict on the issue of willful infringement was "advisory only," and that this conclusion "rendered moot" the defendants' motion for judgment as a matter of law on that issue). The court will consider Concordia's arguments in the context of determining whether to award enhanced damages or attorneys' fees in the instant case.

## II. Motion for Enhanced Damages and Prejudgment Interest

In its second motion, Concordia seeks to recover enhanced damages and prejudgment interest. Before turning to the parties' arguments, the court will briefly summarize the relevant statutory provision. The Lanham Act provides that a plaintiff who prevails on a claim under 15 U.S.C. § 1125(a) "shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Act further provides that "[i]n assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." <u>Id.</u> The Act makes clear that enhanced damages may be awarded to fairly compensate a prevailing plaintiff, but may not be imposed for punitive reasons. <u>See id.</u> ("Such sum . . . shall constitute compensation and not a penalty."); <u>see also</u> <u>Badger Meter, Inc. v. Grinnell Corp.</u>, 13 F.3d 1145, 1157 (7th Cir. 1994) (explaining that "because plaintiffs' lost profits are notoriously difficult to prove," § 1117(a) permits a district court to "award up to three times the damages plaintiff can actually prove" in order to "approximate a fair recovery for the plaintiff"); <u>ALPO Petfoods, Inc. v. Ralston Purina Co.</u>, 997 F.2d 949, 955 (D.C. Cir. 1993) (observing that enhanced damages are appropriate to compensate a Lanham Act plaintiff for adverse effects that "can neither be dismissed as

9

speculative nor precisely calculated," and that "[l]ost profits and market distortion are . . . appropriate bases for the catch-all enhancement contemplated by [§ 1117(a)]").

A. **Enhanced Damages**

Although the Lanham Act itself provides "little guidance on the equitable principles to be applied by a court in making an award of damages," the United States Court of Appeals for the Fourth Circuit has "identified six factors to guide the process." Synergistic, 470 F.3d at 174-75. Those factors are: "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." Id. at 175. No particular factor is dispositive, and different or additional factors may be considered if the circumstances require. Id. at 175-76; see also Exclaim Mktg., 2016 U.S. App. LEXIS, at *17 (holding that the district court did not abuse its discretion in concluding that certain Synergistic factors favored an enhanced award under § 1117(a)). For the following reasons, the court finds that the relevant factors weigh in favor of enhancing the amount of damages awarded by the jury.

The first factor – whether the defendants had the intent to confuse or deceive – addresses whether the defendants acted willfully or in bad faith. Synergistic, 470 F.3d at 175. In the context of false advertising, a finding of willfulness requires proof that the defendant "knew that . . . its advertising was false or misleading or . . . acted with indifference to . . . whether its advertising was false [or] misleading." Seventh Circuit Federal Jury Instructions: Civil § 13.6.5 (West 2010) (citing Zazu Designs, Ltd. v. L'Oreal, S.A., 979 F.2d 499, 507 (7th Cir. 1992)); see also Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc., 507 F. App'x 26, 31 (2d Cir. 2013) ("To prove willfulness, a 'plaintiff must show (1) that the defendant was actually aware of the

10

infringing activity, or (2) that the defendant's actions were the result of reckless disregard or willful blindness.'") (quoting Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005)).

In this case, the jury found that the defendants did not willfully engage in false advertising. Based on the court's own review of the record, however, the court believes that the evidence supports a contrary finding. Specifically, the court finds that the defendants, at a minimum, acted with indifference to whether their affirmative representations regarding the existence and availability of Me-PB-Hyos were false or misleading. Therefore, the court declines to accept the jury's verdict on the issue of willfulness. In light of the court's finding on this issue, the first Synergistic factor weighs in favor of awarding enhanced damages to Concordia. The court notes, however, that "a finding of willfulness is not required to justify enhanced damages." Choice Hotels Int'l, Inc. v. Zeal, LLC, No. 4:13-01961-BHH, 2016 U.S. Dist. LEXIS 99342, at * (D.S.C. July 29, 2016) (citing ALPO Petfoods, 997 F.2d at 955); see also Synergistic, 470 F.3d at 175 (observing that a lack of willfulness or bad faith "does not necessarily preclude" an award of damages). Under the facts and circumstances of this particular case, even if the court were to accept the jury's finding of nonwillfulness, the court would still find it appropriate to enhance the damages awarded to Concordia.

The court's decision in this regard is supported by the majority of the remaining factors, including the second factor. This factor – whether sales were diverted – "involves the issue of whether the plaintiff lost sales as a result of the defendant's [false advertising], and the extent to which the plaintiff had entered the market area where the [false advertising] occurred." Synergistic, 470 F.3d at 175. As indicated above, the evidence adduced at trial indicated that Concordia experienced a significant reduction in Donnatal sales after Me-PB-Hyos was listed

11

with the pharmaceutical databases. Concordia also presented evidence regarding the expenses it incurred in the course of attempting to mitigate the impact of the Me-PB-Hyos listings. For instance, Concordia spent $885,015.00 on a coupon buy-down program implemented to combat the negative effects of the database listings. The company also revamped its marketing strategy and engaged in increased promotional efforts targeting pharmacies and prescribers. Although Concordia was unable to prove that the database listings for Me-PB-Hyos were solely to blame for the decline in Donnatal sales during the time period at issue,[2] the court is convinced that the amount of damages awarded by the jury does not provide adequate compensation for the adverse effects of the defendants' unlawful actions. Accordingly, the second factor weighs in favor of awarding enhanced damages.

The third factor – the adequacy of other remedies – addresses whether other forms of relief, such as an injunction, "might more appropriately correct any injury the plaintiff suffered from the defendant's infringing activities." Synergistic, 470 F.3d at 176. In this case, an injunction or other nonmonetary relief would not adequately compensate Concordia for the lost sales and other market harm that it experienced as a result of the defendants' false advertising. Accordingly, this factor also weighs in favor of enhancing the damages awarded to Concordia.

The same is true for the fourth factor, which "addresses the temporal issue of whether the plaintiff waited too long, after the infringement activities began, before seeking court relief." Id. The defendants listed the Me-PB-Hyos products with Medi-Span in April of 2014. The prior owner of Donnatal filed the instant action on April 29, 2014, and moved for a preliminary injunction one week later. Accordingly, there was no unreasonable delay by the plaintiff in

---

[2] Indeed, the court ruled prior to trial that no expert, including Ivan Hofmann, could authoritatively state that all of the lost profits suffered by Concordia were attributable to the database listings for Me-PB-Hyos.

12

asserting its rights, and, thus, the fourth factor weighs in favor of increasing Concordia's damages award.

The fifth and final relevant factor is "the public interest in making the infringing misconduct unprofitable."[3] Id. This factor addresses the balance that a court should strike between a plaintiff's "right to be compensated" for the defendant's unlawful actions, and "the statutory right of the defendant to not be assessed a penalty." Id.; see also Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1077 (9th Cir. 2015). After carefully considering the facts and circumstances in this case, the court is of the opinion that awarding enhanced damages to Concordia will not disturb this delicate balance.

Based on the foregoing analysis, the court finds that the applicable Synergistic factors weigh in favor of awarding enhanced damages to Concordia. Specifically, the court will exercise its discretion to treble the amount found as actual damages, and award Concordia $2,199,600.00. The court believes that this enhanced award is necessary to fairly and adequately compensate Concordia for the adverse effects of the defendants' misconduct, and that it does not constitute an impermissible "penalty." 15 U.S.S.C. § 1117(a). Accordingly, the court will grant Concordia's request for enhanced damages.

B. **Prejudgment Interest**

In the same motion, Concordia seeks an award of prejudgment interest, at a rate selected by the court, "for all amounts ultimately awarded in this action." Pl.'s Mot. for Enhanced Damages, Docket No. 266 at 11. Although the Lanham Act does not specifically provide for prejudgment interest, such an award is within the discretion of the trial court. See Georgia-

---

[3] The sixth factor identified in Synergistic "involves the issue of whether the defendant used its infringement of the plaintiff's mark to sell its products, misrepresenting to the public that the defendant's products were really those of the plaintiff." Synergistic, 470 F.3d at 176. Such "palming off" was not at issue in this case. Id.

13

Pacific Consumer Prods. LP v. Von Drehle Corp., 781 F.3d 710, 722 (4th Cir. 2015) ("[W]e do not categorically foreclose an award of prejudgment interest under § 1117(a) as an element of a damages award in a trademark infringement case."). The primary factor to consider in deciding whether to award prejudgment interest is whether such an award is "necessary to compensate the plaintiff fully for [its] injuries." Mary Helen Coal Corp. v. Hudson, 235 F.3d 207, 210 (4th Cir. 2000) (citation and internal quotation marks omitted).

In the instant case, the court declines to exercise its discretion to award prejudgment interest. The court believes that an award of treble damages will fairly and adequately compensate Concordia for the harm that resulted from the defendants' misconduct, and that the imposition of prejudgment interest on that amount could be viewed as punitive in nature, rather than compensatory. See Buzz Off Insect Shield, LLC v. S.C. Johnson & Sons, Inc., 606 F. Supp. 2d 571, 592 (M.D.N.C. 2009) (declining to award prejudgment interest based on the conclusion that the jury award was sufficient to compensate the prevailing party). Accordingly, the court will deny Concordia's request for prejudgment interest.

### III. Motion for Attorneys' Fees and Litigation Costs

In its third motion, Concordia seeks to recover its attorneys' fees and litigation costs. The court will address each request in turn.

#### A. Attorneys' Fees

The Lanham Act authorizes a district court to award reasonable attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). Although the statute does not define the criteria that a case must satisfy in order to qualify as "exceptional," the Fourth Circuit has made clear that an "exceptional" case requires more than just volitional conduct. See Georgia-Pacific, 781 F.3d at 720 ("To affirm the district court's application of its volitional

14

standard would mean that every Lanham Act case would qualify as 'exceptional' unless the defendant could show that it unintentionally or mistakenly performed the actions later found to be a violation of the Act."). In Georgia-Pacific, the Fourth Circuit applied the principles enunciated by the Supreme Court in Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749 (2014), in which the Supreme Court analyzed the same fee award standard under the Patent Act. Id. at 720-721. Applying those principles, the Fourth Circuit held that a case may be deemed "exceptional" under § 1117(a) in three limited circumstances: (1) when "there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable"; (2) when "the non-prevailing party has litigated the case in an unreasonable manner"; or (3) when "there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 721 (citations and internal quotation marks omitted).

After considering the totality of the circumstances in the instant case, the court is unable to conclude that it qualifies as "exceptional." First, Concordia has not established that the defendants' position on the claim for false advertising was frivolous or objectively unreasonable. While Concordia ultimately prevailed at trial, the court denied its dispositive motions on the issue of liability, both at the summary judgment stage and at the close of the defendants' evidence. Accordingly, the court cannot say that the defendants' arguments in defense of the false advertising claim were so frivolous or objectively baseless as to justify an award of attorneys' fees. See, e.g., Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551 (Fed. Cir. 1989) ("[W]e find it difficult to agree that [a] defense was 'baseless' when it survived a motion for summary judgment and was rejected only after findings were made on disputed facts"); Exclaim Mktg., LLC v. DirecTV, LLC, No. 5:11-CV-684-FL, 2015 U.S. Dist.

15

LEXIS 132937, at *18 (E.D.N.C. Sept. 30, 2015) ("As evidenced by the fact that the case went to trial, neither the law nor the evidence was so clear as to warrant only one conclusion."); LendingTree, LLC v. Zillow, Inc., 54 F. Supp. 3d 444, 459 (W.D.N.C. 2014) ("[T]he Court consistently denied Zillow's arguments that it was entitled to judgment as a matter of law, which mitigates against a finding that LendingTree pursued meritless claims.") (internal citations omitted).

The court is also unable to find that this case was litigated in an unreasonable manner. The Supreme Court has explained that "a district court may award fees in the rare case in which a party's unreasonable conduct – while not necessarily independently sanctionable – is nonetheless so 'exceptional' as to justify an award of fees." Octane Fitness, 134 S. Ct. at 1757. Typically, this prong is satisfied where the non-prevailing party engages in some form of "egregious behavior" in litigating a case. LendingTree, 54 F. Supp. 3d at 460 (collecting cases). In support of its request for attorneys' fees, Concordia highlights the evidence underlying its claim for false advertising. While the evidence cited by Concordia supports the jury's verdict on the issue of liability and the court's finding on the issue of willfulness, the court does not believe that the case as a whole was litigated unreasonably, or that any of the defendants' litigation tactics were so exceptional as to justify an award of fees. Moreover, as the Fourth Circuit recently made clear, a finding of willfulness, standing alone, "is no longer sufficient to show that a case is 'exceptional.'" Exclaim Mktg., 2016 U.S. App. LEXIS 23378, at *25.

Finally, the court does not believe that an award of fees is necessary to advance considerations of compensation or deterrence. The court considered the need for compensation in ruling on Concordia's request for enhanced damages. As indicated above, the court is of the opinion that an award of treble damages will fairly compensate Concordia for the harm caused

16

by the defendants' conduct. Likewise, under the facts and circumstances of this case, the court is convinced that the award of treble damages will more than adequately deter the defendants and others from engaging in similar unlawful conduct in the future. Accordingly, Concordia's motion for attorneys' fees will be denied.

### B. Litigation Costs

In its final request, Concordia seeks to recover its litigation costs. As noted above, the Lanham Act provides that prevailing plaintiffs "shall be entitled, . . . subject to the principles of equity, to recover . . . the costs of the action." 15 U.S.C. § 1117(a). At this time, however, Concordia has not requested a specific amount of costs, or submitted any evidence in support of such an award. Accordingly, the request for litigation costs will be denied without prejudice. If Concordia wishes to pursue this request, it must submit appropriate documentation within thirty days of the date of entry of this memorandum opinion and order.

### Conclusion

For the reasons stated, the plaintiff's motion for judgment as a matter of law or a new trial will be denied as moot, the plaintiff's motion for enhanced damages and prejudgment interest will be granted in part and denied in part, and the plaintiff's motion for attorneys' fees and litigation costs will be denied in part and denied without prejudice in part. The judgment will be amended to reflect an award of damages in the total amount of $2,199,600.00.

The Clerk is directed to send copies of this order and the accompanying memorandum opinion to all counsel of record.

DATED: This 2d day of March, 2017.

/s/ *signature*
Chief United States District Judge

17

Case 3:14-cv-00016-GEC   Document 272   Filed 03/02/17   Page 17 of 17   Pageid#: 8558